**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JOHN CURRIER,**

    **Consolidated Plaintiff**
    **(from Case No. 22-11394),**         **Case No. 22-10439[1]**

**v.**         **Hon. Denise Page Hood**

**UNITED STATES OF AMERICA,**

    **Defendant.**
_____/

**ORDER GRANTING MOTION TO EXCLUDE THE**
**OPINIONS OF DR. TIMOTHY LUKAS AND**
**MOTION FOR SUMMARY JUDGMENT AS TO**
**PLAINTIFF JOHN CURRIER'S CLAIMS [ECF No. 29]**

### I.    INTRODUCTION

Now, before the Court, is Defendant United States of America's Motion to Exclude Dr. Timothy Lukas and for Summary Judgment on Plaintiff John Currier's claim for non-economic losses stemming from a motor vehicle accident ("MVA"). [ECF No. 29]. Plaintiff filed a response on November 20, 2023. [ECF No. 33]. Defendant filed a reply on December 4, 2023.  Briefing is complete and a hearing was held on the matter.

---

[1] Plaintiff John Currier's case (Case No. 22-11394) was consolidated with the instant case, *Jerry Currier v. United States*, Case No. 22-10439.  [ECF No. 12, 9/6/22]  Plaintiff Jerry Currier entered into a settlement agreement with the United States and his claims were dismissed with prejudice.  [ECF No. 34, 11/28/23]

## II.    BACKGROUND

Here are the facts presented by Plaintiff's Complaint. On July 3, 2020, Plaintiff was in the driver's seat of a motor vehicle stopped on King Road in the Township of East China, County of St. Clair, State of Michigan. [Case No. 22-11394, ECF No.1, PageID.4]. At that time, the rear of Plaintiff's vehicle was struck by a United States Postal Service truck driven by Defendant's employee Evan Daniel Melick. *Id*. Plaintiff alleges that the MVA was the result of Melick's negligence. *Id*. As a result, Plaintiff brings one count of negligence against Defendant United States of America for the acts and omissions of its agent Evan Melick pursuant to the Federal Tort Claims Act and the Michigan No Fault Act. *Id*. at PageID.5.

Specifically, Plaintiff complains that Melick:

A. Failed to maintain a proper lookout in front of the vehicle he was driving;
B. Drove in a careless and/or negligent manner, in violation of MCL 257.626b;
C. Drove in a reckless manner in violation of MCL 257.626;
D. Failed to keep a sharp and careful lookout;
E. Failed to see what there was to be seen;
F. Drove with willful and wanton disregard for the safety of the Plaintiff;
G. Failed to maintain a reasonable and proper lookout to see what was plainly to be seen;
H. Failed to operate the postal vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard for the traffic surface, width of the highway, the presence of legally stopped vehicles on the roadway, and for any other condition then existing in violation of MCL 257.627;

2

I. Failed to operate the postal vehicle at a speed that would permit it to stop within the assured clear distance ahead, in violation of MCL 257.627;

J. Failed to keep said postal vehicle constantly under control;

K. Failed to yield the right of way;

L. Failed to operate said vehicle in such a manner so as not to endanger the Plaintiff;

M. Failed to properly keep his eyes on the roadway in front of him;

N. Upon information and belief, may have been a distracted driver.

*Id*. at PageID.4-5. As a result of Melick's actions Plaintiff alleges several injuries to both knees, his neck, and back. *Id*. at PageID.6. Plaintiff seeks damages in the amount of $1,500,000.00, general damages according to the proofs, special damages according to the proofs, damages for physical pain and suffering, past, present, and future, damages for mental anguish, including embarrassment, humiliation, past, present, and future, decreased enjoyment of life, medical bills, wage and earning loss, lost employment benefits, pre-judgment and post-judgment interest, costs incurred for suit, damages in excess of those provided under the Michigan No-Fault Act and Plaintiff's No-Fault coverage, and any other relief the Court deems just and proper. *Id*. at PageID.7.

## III.   PROCEDURAL BACKGROUND

Plaintiff filed suit against Defendant on June 22, 2022. [Case No. 22-11394, ECF No. 1].  Earlier, on February 28, 2022, co-Plaintiff Jerry Currier, Plaintiff's brother and passenger in the vehicle at the time of the accident, filed suit seeking damages he incurred stemming from the same accident. [Case No. 22-10439, ECF

3

No. 1]. On September 6, 2022, this Court consolidated both cases under Case No. 22-10439. [ECF No. 12]. Jerry Currier resolved his claims with Defendant.  [ECF No. 34]

Defendant moves the Court to grant summary judgment as to John Currier's claims in its favor because (1) Currier's back and neck were not injured in the accident; (2) Currier's left knee was injured before the accident; (3) treating physician Dr. Timothy Lukas is not qualified to give expert testimony on causation because his qualifications and methodology cannot be established under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); (4) Currier's pain and suffering claim also fails because he cannot show the accident impacted his normal life; and (5) Currier's claim for loss of earnings capacity is barred by the Michigan No Fault Act. [ECF No. 29, PageID.200-01].

For the reasons herein, Defendant's motion for summary judgment is granted as to Plaintiff's wage loss claim and as to his claim for non-economic damages. Moreover, Defendant's motion to exclude the expert testimony of Dr. Timothy Lukas is granted.

## IV.   ANALYSIS

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment on some or all counts. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to establish that there is no genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A). "As the party moving for summary judgment, Defendants bear the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim." *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Courts "must accept Plaintiff's evidence as true and draw all reasonable inferences in her favor[.]" *Id*. The Court "may not make credibility determinations nor weigh the evidence before it when determining whether an issue of fact remains for trial." *Id*.

## A. Plaintiff's claim for non-economic damages

The Federal Tort Claims Act ("FTCA") expressly states that the choice of law for a claim filed pursuant to the FTCA depends on the location of the allegedly tortious act. *Premo v. United States*, 599 F.3d 540, 546 (6th Cir. 2010); 28 U.S.C.A. § 1346(b)(1). Therefore, we must look to Michigan's No-Fault Act to determine the extent of liability in this matter. *Id*. A plaintiff seeking non-economic damages for tort lability under the Michigan No-Fault Act must show that the incident in question

5

caused death, serious impairment of body function, or permanent serious disfigurement. M.C.L. 500.3135(1).

Plaintiff claims that the MVA caused serious impairment of body function. [Case No. 22-11394, ECF No. 1, PageID.6]. Section five of the No-Fault Act defines serious impairment of body function. It states,

> As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:
>
> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.
>
> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.
>
> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

M.C.L. 500.3135(5); *McCormick v. Carrier*, 487 Mich. 180, 795 NW2d 517 (2010).

### 1. Plaintiff's Back and Neck

First, Defendant asserts that Plaintiff's alleged back and neck injuries do not pass the first prong of the serious impairment test. [ECF No. 29, PageID.221]. Plaintiff does not deny that he experienced back and neck pain prior to the accident. Instead, he argues that the accident re-aggravated his back and neck, causing him to

lose the ability to work his part-time job at Achatz Catering, take care of household chores, and participate in other activities. [ECF No. 33, PageID.1413-14]. Specifically, Plaintiff argues that prior to the accident, his back pain was a two or three and after the pain increased to a nine out of ten. [ECF NO. 33, PageID.1414]. As Plaintiff notes, he "must introduce evidence establishing that there is a physical basis for [his] subjective complaints of pain and suffering" to overcome summary judgment. *McCormick*, 487 Mich. at 196. Plaintiff has failed to do so. Instead, he argues that his back and neck conditions were exacerbated by the accident and provides no actual symptoms or conditions other than he could observe or perceive. Even Plaintiff's reliance on his treating physician's testimony that he was taking medication for the pain is not sufficient because the physician, Joseph Kulczewski, testified that he could not recall Plaintiff saying that the accident made his back and neck pain worse. [ECF No. 29-31, PageID.885]. Plaintiff has not shown a causal connection between the MVA and his back and neck pain sufficient to satisfy the objectively manifested standard required by Michigan law. Summary judgment is granted as to Plaintiff's claim for non-economic damages to the extent Plaintiff claims damages for back or neck injuries resulting from the MVA.

## 2. Plaintiff's Left Knee Injury

Plaintiff asserts that "the primary injury is the left knee." [ECF No. 33, PageID.1413]. Again, Plaintiff does not deny that he had pre-existing knee problems.

7

His knee issues are well documented on the record. Summarily, Plaintiff reported left knee pain in February of 2020, five months prior to the MVA, which he argues was eliminated due to exercise and weight loss. Defendant argues that because of such pre-existing knee issues, Plaintiff "needs expert testimony to establish causation[.]" [ECF No. 29, PageID.224]. Defendant cites no authority stating the same but attacks Plaintiff's expert, Dr. Timothy Lukas under *Daubert* arguing that Dr. Lukas is not qualified to provide expert testimony as to causation and attacking his use of a differential diagnosis methodology. *Id*. at PageID.227.

For expert testimony to be admissible it must satisfy Rule 702 of the Federal Rules of Evidence. The district court must determine whether the expert's testimony meets three requirements: (1) the expert witness must be qualified by "knowledge, skill, experience, training or education," (2) the proffered testimony must be relevant and "assist the trier of fact to understand the evidence or to determine a fact issue," and (3) the testimony must be reliable in that it is based on scientific, technical or other specialized knowledge. Fed. R. Evid. 702; *In re Scrap. Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). The expert disclosures reveal that Dr. Lukas plans to testify based on his education, training, and years of experience. [ECF No. 30-15, PageID.1234]. Where an expert primarily relies on their experience, they must "explain how that experience leads to the conclusion reached…and how that experience is reliably applied to the facts. The trial court's gatekeeping function

8

requires more than simply 'taking the expert's word for it.'" *Thomas v. City of Chattanooga*, 398 F. 3d 426, 432 (6th Cir. 2005).

As to qualifications, Dr. Lukas has a Bachelor of Science in biology from the University of Houston. [ECF No. 33-8, PageID.1672]. He obtained his medical degree from the University of Texas at Southwestern Medical School. *Id*. Dr. Lukas completed his residency in Orthopedic Surgery at the Henry Ford Medical Center in Detroit, MI where he was elected and served as chief resident. *Id*. His curriculum vitae reveals that he has several board certifications and that he holds membership in professional organizations related to orthopedic surgery. *Id*. Defendant does not attack Dr. Lukas' qualifications in the abstract. However, Defendant is concerned with such qualifications provide a foundation for Dr. Lukas to answer the specific question of causation. [ECF No. 29, PageID.229 quoting *Berry v. City of Detroit*, 25 F. 3d 1342, 1351 (6th Cir. 1994)]. Defendant argues that neither Plaintiff's expert disclosures, nor Dr. Lukas' deposition provide any information or foundation for how Dr. Lukas' qualifications lead to his causation opinions. *Id*. Furthermore, Defendant argues that Dr. Lukas' differential diagnosis cannot be accepted because he did not consider Plaintiff's pre-accident knee injury. [ECF No. 29, PageID.227].

Relative to this motion, Plaintiff's expert disclosures state that Dr. Lukas will testify as to "his detailed findings as to causation" of Plaintiff's injury. [ECF No. 30-15, PageID.1233]. Plaintiff first saw Dr. Lukas on August 13, 2020, about six weeks

after the MVA. [ECF No. 30-11, PageID.1169]. Plaintiff argues that "Dr. Lukas reviewed all of the Plaintiff's relevant pre-accident history, visit by visit, while being subjected to rigorous cross examination by a US Attorney before he rendered his opinion on causation." [ECF No. 33, PageID.1414-15]. Plaintiff further argues that Dr. Lukas reviewed Plaintiff's pre-accident history, objective findings on the MRI and conducted a physical examination of the Plaintiff. *Id*. at PageID.1415. Dr. Lukas further reviewed a sworn statement from Plaintiff regarding symptoms he had before and after the MVA. *Id*. This is reflected in Plaintiff's expert disclosures. [ECF No. 30-15, PageID.1235]. Plaintiff intends to rely on the differential diagnosis performed by Dr. Lukas to establish a causal connection between the MVA and Plaintiff's alleged left knee injury.

Differential diagnosis is recognized by the Sixth Circuit as an "appropriate method for making a determination of causation for an individual instance of disease." *Hardyman v. Norfolk & W. Ry. Co.,* 243 F.3d 255, 260 (6th Cir. 2001). A reliable differential diagnosis determine[es] the possible causes for the patient's symptoms and then eliminat[es] each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." *Id*. at 260-61. Adopting the test of the Third Circuit, the Sixth Circuit found that a medical-causation opinion in the form of a doctor's differential diagnosis is reliable and admissible where the doctor (1) objectively ascertains, to the extent

possible, the nature of the patient's injury, (2) "rules in" one or more causes of the injury using a valid methodology, and (3) engages in "standard diagnostic techniques by which doctors normally rule out alternative causes" to reach a conclusion as to which cause is most likely. *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 179 (6th Cir. 2009).

The key issue with Dr. Lukas' differential diagnosis is that it heavily considers Plaintiff's own recitation of his patient history and both Plaintiff and Dr. Lukas testified that Plaintiff did not tell Dr. Lukas about his pre-existing left knee injury. Therefore, Dr. Lukas did not rule out that Plaintiff's knee injury could have been caused by or was exacerbated prior to the MVA. Plaintiff did not see Dr. Lukas until about six weeks after the MVA. With Plaintiff's medical history, there is no telling what could have occurred to worsen his already injured body. For these reasons, Dr. Lukas could not objectively ascertain the nature of Plaintiff's injury because Plaintiff did not give him all the necessary information to do so.

Plaintiff argues that Dr. Lukas should not be excluded because Defendant's attacks go to weight and not admissibility. However, the Sixth Circuit has held that "a doctor's opinion did not meet 'the kind of methodological rigor that characterizes acceptable differential diagnosis'" *Best*, 563 F.3d at 179 citing *Rolen v. Hansen Beverage Co.*, 193 F. App'x 468, 474 n. 4 (6th Cir. 2006).

11

Because Dr. Lukas did not consider the full extent of Plaintiff's medical history with respect to Plaintiff's left knee, his opinions as to causation will be excluded. Even without Dr. Lukas, Plaintiff should be able to establish causation through Joseph Kulczewski, his treating physician prior to and more immediate in time after the accident.

### 3.  Impact to Plaintiff's Normal Life

Defendant further argues that Plaintiff's claim for pain and suffering fails because Plaintiff cannot show that his injury had an influence on some of his capacity to live in his normal manner of living. [ECF No. 29, PageID.229 citing *Lopez-Garcia v. United States*, 207 F. Supp. 3d 753, 759 (E.D. Mich. 2016)]. To make this determination, the Court must look at Plaintiff's life before and after the MVA.

Plaintiff argues that prior to the crash, he was able to exercise, which helped him to lose weight and reduce low back pain and knee symptoms. [ECF No. 33, PageID.1411]. He was also able to work at Achatz Catering where his job required him to push, lift, and carry 30-40 lbs., climb, bend, twist, kneel, crawl, walk long distances, and stand for extended periods of time. *Id*. Plaintiff reported that he had left knee pain in early 2020 but that it had subsided prior to the MVA due to his lifestyle changes. *Id*. Plaintiff further argues that since the MVA, he is unable to do any work anymore because he is unable to work on his knees. Plaintiff asserts that

due to the MVA and his left knee injury, his knee constantly feels horrible and keeps giving out on him. *Id.* at PageID.1425. He states that he is no longer able to do sculpture work or welding, he has a hard time grocery shopping, caring for his chickens and dog, and to go up and down stairs to do laundry among other things. *Id.* Plaintiff claims that he was able to do all these activities prior to the MVA.

Relying on a 2019 deposition of Plaintiff related to a separate motor vehicle accident, Defendant argues that Plaintiff made the exact same claims related to a 2018 accident. [ECF No. 29, PageID.229-30]. The only difference between the limitations claimed in 2019 seem to be that Plaintiff attributed the limitations to his right knee while here he attributes them to his left knee. Defendant argues that the record shows that Plaintiff had not kept steady employment for several years before the MVA, which did not change at Achatz given Plaintiff only worked about 10 hours a week. [ECF No. 35, PageID.1687]. Plaintiff's ability to live his normal life is the same as it was prior to the MVA.

Notably, Plaintiff testified that he underwent several lifestyle changes, including weight loss, between the 2019 deposition and the 2020 MVA which improved his ability to work and perform activities and household tasks. [ECF No. 33, PageID.1423]. However, the record shows an increase in Plaintiff's weight between the 2019 deposition and the 2020 MVA and that he was still reporting back and knee pain. [ECF No. 35, PageID.1686]. Plaintiff does not point to any evidence

13

showing that he was unable to do these tasks other than his subjective assertions. Because the Court finds that Plaintiff has not established a causal connection between the MVA and his left knee injury, the Court finds that summary judgment is also appropriate because Plaintiff has not shown that his normal life was affected by the MVA.

## B. Plaintiff's "loss wages" claim

Finally, Defendant argues that summary judgment should be granted because Plaintiff's work-loss claim is a claim for loss of earning capacity which is barred by the Michigan No Fault Act. M.C.L. 500.3135(3)(c); [ECF No. 29, PageID.230-31]. The Michigan No-fault Act allows individuals sustaining bodily injury because of the actions of a government tortfeasor "when the evidence presented demonstrates that the wages at issue were inevitable but for the accident[.]" *Hannay v. Dep't of Transp.*, 497 Mich. 45, 85, 860 N.W.2d 67, 90 (2014). "[D]amages for work loss consist of wages that a person 'would' have earned but for the accident, whereas loss-of-earning-capacity damages are wages a person 'could' have earned but for the accident. *Id*. at 80-81. Work-loss damages are only available where the accident was the but-for cause of the work-loss. *Id*. at 80.

Plaintiff contends that he is entitled to up to $1.9 million in loss wages based on his expert economist's prediction the Plaintiff would work 40 hours per week, at $30 per hour, for the next 30 years. [Exhibit 47 CITE]. According to Plaintiff, "[t]he

14

expert economist took into consideration the COVID pandemic, the Plaintiff's own statements with regards to his employment, the owner of the companies deposition transcript, and created a wage-loss chart that documented the Plaintiff's lost-wages for every year until the Plaintiff reached the age of 82.7." [ECF No. 33, PageID.1430-31]. Plaintiff provided documentation from Steven Achatz, the owner of Achatz Catering, where Plaintiff had been working irregular hours in the weeks leading up to the accident. Mr. Achatz asserts that "but for the accident, John Currier would have been working full time at $30 an hour." [ECF No. 33, PageID.1431]. Nevertheless, Mr. Achatz also stated that once COVID ended, he wanted Plaintiff to work 40 hours per week. *Id*. This implies that COVID, not the accident, was preventing Plaintiff from working full time. Furthermore, this wishful request for Plaintiff to work at a rate of 40 hours per week assumes that Plaintiff's health would permit him to do so. Such assumptions are inconsistent with the fact that despite Plaintiff only working an average of 10 hours per week in the weeks leading up to the MVA, he was consistently reporting high levels of pain. Plaintiff's claim for loss wages seems to tip the scale in favor of summary judgment as it crosses over the threshold into the speculative nature of a claim for loss earning capacity which is barred by the Michigan No Fault Act. The facts are too tenuous to conclude that the MVA is a but-for cause of Plaintiff's inability to work. See *Hannay*, 497 Mich. at 52.

15

Therefore, summary judgment is granted relative to Plaintiff's loss of earning capacity claim.

## V.      CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Defendant United States of America's Motion to Exclude the Opinions of Dr. Timothy Lukas and for Summary Judgment on Plaintiff John Currier's Claims **[ECF No. 29]** is **GRANTED**.  This action is DISMISSED and CLOSED on the docket.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

 DATED:  March 31, 2026

16